UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BETTER CHOICE FOUNDATION**<br>**D/B/A MARY D. COGHILL CHARTER**<br>**SCHOOL,** | **CIVIL ACTION**<br><br>**NO: 20-469** |
| **VERSUS** | **SECTION: "T" (4)** |
| **ORLEANS PARISH SCHOOL BOARD**<br>**AND DR. HENDERSON LEWIS, JR.**<br>**SUPERINTENDENT, ORLEANS**<br>**PARISH PUBLIC SCHOOLS.** | |

## ORDER

On March 10, 2020, the Orleans Parish School Board and Dr. Henderson Lewis, Jr., in his official capacity as Superintendent of Orleans Parish Public Schools, (jointly, "Defendants"), filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) against Better Choice Foundation d/b/a Mary D. Coghill Charter School ("Plaintiff").[1] Plaintiff filed an opposition on March 17, 2020.[2] With leave of the Court, Defendants on April 7, 2020, filed a reply in support of their Motion to Dismiss[3]. For the following reasons, Defendants' Motion to Dismiss[4] is **GRANTED**, and Plaintiff's federal claim is hereby dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises from a contractual dispute between a private non-profit corporation operating a charter school and a parish school board. Plaintiff corporation seeks injunctive, declaratory, and monetary relief for an alleged violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, contending Defendants have deprived it of a

---

[1] R. Doc. 11.
[2] R. Doc. 14.
[3] R. Doc. 25.
[4] R. Doc. 11.

1

vested property interest without due process of law.[5] Plaintiff asserts this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1343(a)(3) and (4), and 2201.[6] Plaintiff also seeks relief under Louisiana state law, contending the statute authorizing the Defendants' actions is unconstitutional under the Louisiana Constitution of 1974.[7]

According to Plaintiff's Complaint,[8] prior to Hurricane Katrina the Orleans Parish School Board ("OPSB") operated Mary D. Coghill School as a traditional public school under the direct control of the OPSB.[9] Following Hurricane Katrina, the school was transferred to the control of the Recovery School District ("RSD").[10] Thereafter, the Louisiana Board of Elementary and Secondary Education ("BESE") authorized the school to become a Type 5 charter school.[11] BESE contracted with Plaintiff, Better Choice Foundation, to operate the school, which became known as Mary D. Coghill Charter School, an open-enrollment community school servicing the Gentilly, Gentilly Woods, and Pontchartrain Park neighborhoods.[12]

In 2016, Plaintiff successfully sought to be transferred from the jurisdiction of BESE and the RSD to that of the OPSB.[13] On July 1, 2016, OPSB and Better Choice Foundation entered into a Type 3B Charter School Operating Agreement (the "Charter Operating Agreement").[14] The term

---

[5] R. Doc. 1.
[6] *Id.*
[7] *Id.*
[8] R. Doc. 1.
[9] *Id.*, p. 3.
[10] *Id.*
[11] A Type 5 charter school is a preexisting public school transferred to the Recovery School District as a school determined to be failing pursuant to R.S. 17:10.5 or R.S. 17:10.7, and operated as the result of and pursuant to a charter between a nonprofit corporation and the state Board of Elementary and Secondary Education. *See generally* LA. ADMIN. CODE tit. 51, pt. 139 (2019).
[12] R. Doc. 1, pp. 2-3.
[13] R. Doc. 1, pp. 3-4.
[14] A Type 3B charter school is a former Type 5 charter school transferred from the Recovery School District to the administration and management of the transferring local school system pursuant to R.S. 17:10.5, R.S. 17:10.7 and Bulletin 129, §505. *See generally* LA. ADMIN. CODE tit. 28, pt. 139 (2019).

of the Charter Operating Agreement is four years, expiring on June 30, 2020, unless terminated, extended, or renewed.[15]

At the November 21, 2019 OPSB meeting, Orleans Parish Public Schools Superintendent Dr. Henderson Lewis, Jr. ("Superintendent Lewis") recommended to the OPSB that the OPSB not renew Plaintiff's Charter Operating Agreement.[16] Superintendent Lewis recommended the non-renewal of the Charter Operating Agreement because Plaintiff had received an "F" rating for the 2018-2019 school year.[17]

On December 19, 2019, the OPSB voted on Superintendent Lewis's recommendation not to renew Plaintiff's Charter Operating Agreement.[18] Pursuant to La. R.S. § 17:10.7.1, to reject Superintendent Lewis's recommendation, the OPSB must reject the recommendation by a two-thirds vote of the full membership of the board.[19] Having a full membership of seven, the OPSB needed five of its seven members to reject the recommendation.[20] With one member absent, the OPSB voted 4-2 to reject the recommendation.[21] Having only four of the five votes needed to reject the recommendation, the OPSB did not reject Superintendent Lewis's recommendation under La. R.S. 17:10.7.1, and the Superintendent was thus authorized to implement his recommendation. As discussed more fully below, Plaintiff asserts it acquired a property interest in the renewal of the Charter Operating Agreement at this point based on the OPSB's 4-2 vote. Thereafter, Superintendent Lewis issued a School Closure and Transformation Checklist to Plaintiff.[22]

---

[15] R. Doc. 6-1, p.3.
[16] *Id*.
[17] *Id*. The merits of that recommendation are not before the Court.
[18] R. Doc. 6-1, p.4.
[19] R. Doc. 11-1, p.5; La. R.S. § 17:10.7.1(F)(1).
[20] R. Doc. 11-1, pp.12-13.
[21] R. Doc. 6-1, p.4.
[22] R. Doc. 6-1, p.4.

On February 10, 2020, Plaintiff filed this lawsuit.[23] On February 28, 2020, Plaintiff filed a motion for preliminary and mandatory injunction.[24] Plaintiff sought a preliminary injunction prohibiting Superintendent Lewis from taking actions to transition Mary D. Coghill Charter School back to the direct control of the OPSB.[25] Plaintiff also sought a mandatory injunction against the OPSB mandating it renew Plaintiff's Charter Operating Agreement in accordance with its December 19, 2019 vote.[26] On March 10, 2020, Defendants filed an opposition.[27] On March 17, 2020, with leave of the Court, Plaintiff filed a reply.[28] On March 31, 2020, Defendants filed a sur-reply in opposition, also with leave of the Court.[29]

Defendants filed the instant Motion to Dismiss Plaintiff's claims for lack of subject matter jurisdiction under FRCP 12(b)(1) and for failure to state a claim under FRCP 12(b)(6).[30] In their motion, Defendants contend Plaintiff's complaint, comprising of factually incorrect statements, conclusory allegations without any factual support, and undisputed factual allegations, does not state a claim upon which relief can be granted.[31] Defendants also contend Plaintiff lacks standing to bring its suit against Defendants.[32]

## LAW AND ANALYSIS

### A. MOTION TO DISMISS

A motion to dismiss filed under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction.[33] Federal courts are courts of limited jurisdiction; therefore, they have the power to

---

[23] R. Doc. 1.
[24] R. Doc. 6-1.
[25] R. Doc. 6-1, p.2.
[26] *Id*.
[27] R. Doc. 12.
[28] R. Doc. 16.
[29] R. Doc. 19; R. Doc. 19-1.
[30] R. Doc. 11-1.
[31] R. Doc. 11-1, p.8.
[32] R. Doc. 11-1, pp.13-14.
[33] *See* Fed.R.Civ.P. 12(b)(1).

adjudicate claims only when jurisdiction is conferred by statute or the Constitution.[34] A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.[35] The court analyzes a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) with the same standard as a motion to dismiss under Rule 12(b)(6).[36]

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[37] Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.[38] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[39] In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings,[40] and the documents attached to the complaint.[41]

A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[42] The complaint is construed in the light most favorable to plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in plaintiff's favor.[43] On the other hand, courts may not rely on "legal conclusions that are disguised as factual allegations."[44] If factual

---

[34] *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998).
[35] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998).
[36] *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).
[37] Fed. R. Civ. P. 12(b)(6).
[38] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982).
[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).
[40] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).
[41] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[42] *Iqbal*, 556 U.S. at 678.
[43] *Lovick v. Ritemoney Ltd*., 378 F.3d 433, 437 (5th Cir. 2004) (*citing Herrmann Holdings Ltd. v. Lucent Techs., Inc*., 302 F.3d 552, 558 (5th Cir. 2002)).
[44] *Jeanmarie v. United States*, 242 F.3d 600, 603 (5th Cir. 2001) (*citing Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed.[45]

Defendants contend Plaintiff, in making factually incorrect statements and conclusory allegations without any factual support, fails to state a claim upon which relief can be granted.[46] Specifically, Defendants assert (1) Plaintiff fails to identify any facts supporting a claim that its alleged due process rights have been violated, and, alternatively, (2) Plaintiff does not have standing because it cannot assert a claim upon which relief can be granted for its generalized grievance with the law.[47]

**i. § 1983 claim**

Plaintiff alleges a due process violation under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[48] Defendants do not dispute that they were acting under the color of state law. Therefore, the only issue before the Court is whether the first element of a § 1983 action can be satisfied based on the factual allegations in the complaint.

Under the Constitution, a property interest cannot be taken without due process.[49] To prevail on this claim, Plaintiff must demonstrate "(1) that the claimed interest is a property interest protected by the Fourteenth Amendment; and (2) that the alleged loss of that interest amounts to a deprivation of due process of law.[50] "Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules,

---

[45] *Twombly*, 550 U.S. at 555.
[46] R. Doc. 11-1, p.8.
[47] R. Doc. 11-1, pp.9-13.
[48] *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 25 (5th Cir. 1994).
[49] *Richards v. City of New Orleans*, No. CIV. A. 95-1880, 1996 WL 383125, at *4 (E.D. La. July 3, 1996).
[50] *Id*. at *4 *(citing Blackburn,* 42 F.3d at 935).

contractual provisions, or mutually explicit understandings."[51] Additionally, property interests are not created by unilateral expectation: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[52] Property interests can also arise from implied or expressed contracts.[53] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[54] Beyond notice and hearing, however, "due process is flexible," requiring only "such procedural protections as the particular situation demands."[55]

Defendants contend "[Plaintiff] cannot show that they have been deprived of a property right because, even if OPSB's proper vote in a public meeting not to renew the Charter Operating Agreement results in any losses, nothing in [Plaintiff's] current Charter Operating Agreement or the law guarantees that the Agreement would be renewed."[56] Further, Defendants contend Plaintiff cannot allege lack of notice or lack of opportunity to voice opposition to the OPSB's actions because "[Plaintiff] and a large number of its employees, parents, students, board members, and representatives spoke in opposition at several public OPSB meetings on the issue.[57]

Here, Plaintiff alleges that La. R.S. § 17.10.1(F), because it requires a two-thirds vote of the full membership of the OPSB to override Superintendent Lewis's recommendation on whether to renew a charter operating agreement for a charter school, is in violation of Louisiana

---

[51] *Blackburn,* 42 F.3d at 936–37 (citing *Perry v. Sindermann,* 408 U.S. 593, 599–601, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972)).
[52] *Board of Regents v. Roth,* 408 U.S. 564, 577–78, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972); *see Nunez v. Simms,* 341 F.3d 385, 387 (5th Cir. 2003); *Watson v. N. Panola Sch. Dist.*, 188 F. App'x 291, 294 (5th Cir. 2006).
[53] *Perry*, 408 U.S. at 601.
[54] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).
[55] *Id*.
[56] R. Doc. 11-1, p.9.
[57] R. Doc. 11-1, p.10.

Constitution Article VIII § 9(B), La. R.S. § 17:81, and La. R.S. § 17:3992.[58] Plaintiff also alleges that, by implementing his recommendation of nonrenewal, Superintendent Lewis deprived Plaintiff of this property interest.[59] Specifically, Plaintiff alleges it is entitled to the renewal of its Charter Operating Agreement because the exclusive authority to renew the charter contract vests with the OPSB, not with Superintendent Lewis, and the majority of the OPSB voted to renew the Charter Operating Agreement. Thus, Plaintiff asserts it is entitled to a renewal of the Charter Operating Agreement.[60] In its complaint, Plaintiff alleged:

> "by the OPSB rejecting Superintendent Lewis' recommendation and voting to renew the Charter Contract, Plaintiff's right to due process of law, guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974 are being violated because defendants have failed to renew the Charter Contract without due process of law."[61]

This mere legal conclusion, however, is not enough to raise a right to relief above the speculative level. Plaintiff asserts La. R.S. § 17:10.7.1(F) violates Article VIII § 9 of the Louisiana Constitution of 1974 and violates La. R.S. § 17:81 and La. R.S. § 17:3992.1.[62] Specifically, Plaintiff contends that, when a local school board by a majority of the members present votes to reject the local superintendent's recommendation, the local superintendent does not have the authority to implement its recommendation against the will and authority of the local school board.[63] Defendants counter that La. R.S. § 17:10.7.1(F) properly delegates authority to the superintendent to make a recommendation to the board, and Plaintiff merely dislikes the law as written.[64]

La. R.S. § 17:10.7.1(F) states:

---

[58] R. Doc. 1, pp.6-7.
[59] *Id*.
[60] R. Doc. 1, pp.4-6.
[61] R. Doc. 1, p.6.
[62] R. Doc. 6-1, pp.6-7.
[63] R. Doc. 6-1, pp.6-15.
[64] R. Doc. 12, p.2.

8

> F. In order to determine quality standards for all schools and intervene appropriately in instances when student needs are not being met, the local superintendent shall:
>
> **(1)(a) Present recommendations to the local school board regarding the approval, extension, renewal, or revocation of the charter for any charter school under the board's jurisdiction.**
>
> **(b) Unless rejected by a two-thirds vote of the full membership of the board, the local superintendent may implement any such recommendation submitted to the board.**
>
> (c) Any action by the board to reject a recommendation made by the local superintendent pursuant to Subparagraph (b) of this Paragraph shall occur no later than the first board meeting held after the meeting during which the recommendation was submitted to the board.
>
> (2) Monitor and require corrective actions by a charter school with respect to compliance with board policy, state law, or terms of the charter contract.
>
> (3) Be authorized to require one or more charter schools under the school board's jurisdiction to temporarily close, dismiss students, or evacuate in the event that there are credible threats of terror, or an official state of emergency is declared for the area in which any school under the board's jurisdiction is located.[65]

Additionally, Article VIII, § 9 of the Louisiana Constitution of 1974 states:

> (B) Superintendents. Each parish board shall elect a superintendent of parish schools. The State Board of Elementary and Secondary Education shall fix the qualifications and prescribe the duties of the parish superintendent. He need not be a resident of the parish in which he serves.[66]

La. R.S. § 17:81 in relevant part provides:

> (2) Each local public school board shall determine the number of schools to be opened, the location of school houses, and the number of teachers and other school personnel to be employed. The local school superintendent shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that it is not the purpose of this Section to require or direct the reduction of any salary, or salary schedule, presently in force. The local school superintendent shall see that the provisions of the state school law are complied with.
>
> (3) Each local public school board shall delegate authority for the hiring and placement of all school personnel, including those for which state certification is

---

[65] La. Stat. Ann. § 17:10.7.1(F) (emphasis added).
[66] La. Const. Ann. art. VIII, § 9.

required to the local school superintendent. It shall be the responsibility of the superintendent to ensure that all persons have proper certification, as applicable, and are qualified for the position.

(4) Each local public school board shall adopt policies for and establish procedures which require a local school superintendent to:

(a) Delegate to the principal all decisions regarding the hiring or placement of any teacher or other personnel at the school in which the principal is employed, subject to the approval of the local school superintendent.

(b) Consult with teachers prior to making any decisions regarding the hiring or placement of a principal at the school in which such teachers are employed. Any recommendations made by teachers shall not be binding upon the superintendent but shall be considered by the superintendent when making employment decisions.

****

(6) The superintendent and the school principal shall make all employment- related decisions based upon performance, effectiveness, and qualifications as applicable to each specific position. Effectiveness, as determined pursuant to R.S. 17:3881 through 3905, shall be used as the primary criterion for making personnel decisions; however, in no case shall seniority or tenure be used as the primary criterion when making decisions regarding the hiring, assignment, or dismissal of teachers and other school employees.

(7)(a) Any person purporting to enter into any contract on behalf of the school district or schools under the board's jurisdiction, including but not limited to contracts with vendors or contracts of membership in any private or quasi-public entity, shall do so in compliance with policies and procedures adopted by the local public school board in effect at the time the contract is executed.[67]

La. R.S. § 17:81 states the powers of parish school boards, vesting the boards with general control and management of the public schools within their districts.[68] Thus it seems evident that parish school boards have the expressed and implied authority to contract.

As to authority conferred upon superintendents, "the general rule in Louisiana relative to non-elected personnel exercising discretionary powers has been quite settled for many years."[69]

---

[67] La. Stat. Ann. § 17:81.
[68] *See id.*
[69] *Jackson v. Assumption Par. Sch. Bd.*, 94-0901 (La. App. 1 Cir. 3/3/95), 652 So. 2d 549, 551

The Louisiana First Circuit Court of Appeals noted that "superintendents have only as much authority as may lawfully be conferred upon them by law."[70] Parish school boards may delegate administrative responsibilities to superintendents; however, parish school boards have the ultimate judgment in discretionary decisions such as entering or renewing a contract.[71] La. R.S. § 17:81, set forth above, delegates the hiring of personnel to superintendents.[72] La. R.S. §§ 17:90-95, which enunciates various superintendent duties, requires superintendents to visit each school within their district as often as possible, make quarter and annual reports, keep records, and act as treasurer of school funds.[73] These statutes clearly confer upon the superintendent certain administrative responsibilities.

     Plaintiff thus contends only school boards may enter into contracts with third parties and that superintendents are otherwise restricted to administerial duties and duties assigned to him or her by law. This Court, however, does not find that La. R.S. 17:10.7.1(F) improperly delegates to the superintendent any discretionary contractual authority with regard to the renewal of a charter school operating agreement. The Louisiana legislature has prescribed the administrative duties of the superintendent regarding charter schools, that is, having reviewed certain criteria, to "[p]resent recommendations to the local school board regarding the approval, extension, renewal, or revocation of the charter for any charter school under the board's jurisdiction." La. R.S. § 17:10.1(F)(1)(a). Once a recommendation is presented to the board, the legislature has prescribed the manner in which the local school board may exercise its discretion either to accept or reject the superintendent's recommendation, and, "[u]nless rejected by a two-thirds vote of the full membership of the board, the local superintendent may implement any such recommendation

---

[70] *Id*.
[71] *Jackson*, 652 So. 2d at 551.
[72] *See* La. Stat. Ann. § 17:81.
[73] *See* La. Stat. Ann. §§ 17:90-95.

11

submitted to the board." La. R.S. 17:10.7.1(F)(1)(b). Thus, the legislature has set forth the manner in which the school board may accept or reject recommendations of the superintendent with regard to third-party vendors seeking to operate a charter school. By its vote on December 19, 2019, the OPSB necessarily authorized Superintendent Lewis to implement his recommendation, which was not rejected by a two-thirds majority of the full membership of the parish school board. The OPSB thus exercised its discretion to renew or to not renew the charter school operating agreement with Plaintiff, and La. R.S. § 17:10.7.1(F) does not, either on its face or as applied, unconstitutionally delegate the discretionary authority to contract to the superintendent.

Accordingly, Plaintiff did not acquire a right to renew its charter contract when the board did not reject the superintendent's recommendation not to renew Plaintiff's charter school operating agreement. Thus, Plaintiff's claim that the board on December 19, 2019, vested it with a property right is an unsupported legal conclusion masquerading as an allegation of fact. "While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff."[74] "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[75] For the reasons stated, the Court finds Plaintiff has not and cannot allege facts that support any claim upon which it is entitled to relief under § 1983.

**ii. Standing**

Defendants also assert Plaintiff lacks standing. "[T]he irreducible constitutional minimum of standing contains three elements": (1) "the plaintiff must have suffered an 'injury in fact'" that is "concrete and particularized" and "actual or imminent"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to

---

[74]*Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*,20 F.3d 1362, 1366 (5th Cir .1994).
[75]*Blackburn*, 42 F.3d at 931 (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)).

merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"[76] In ruling on a motion to dismiss for want of standing, district courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[77] Defendants contend Plaintiff fails to show some particularized harm.[78] Specifically, Defendants assert that Plaintiff concedes the Charter Operating Agreement expires on June 30, 2020, concedes OPSB has the discretion to renew the Charter Operating Agreement, and does not allege that OPSB is attempting to terminate the Charter Operating Agreement, only that such contract is not being renewed.[79] Because the Court today finds Plaintiff has failed to state any claim on which relief could be granted, the issue of whether Plaintiff has standing to bring this suit is deemed to be moot.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted as to its § 1983 claim, in that Plaintiff did not, and cannot, set forth sufficient facts to establish that it was deprived of its property interest without due process. Accordingly, Defendants' Motion to Dismiss[80] Pursuant to FRCP 12(b)(6) is **GRANTED** as to the § 1983 claim, but it is otherwise **DISMISSED AS MOOT** on the issue of whether Plaintiff has standing. Plaintiff's § 1983 claim is dismissed with prejudice, and its state law claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary and Mandatory Injunction[81] and its Motion for Expedited Consideration[82] are also **DISMISSED AS MOOT**,

---

[76] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).
[77] *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975); *e.g.*, *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1848-49, 23 L.Ed.2d 404 (1969).
[78] R. Doc. 11-1, pp.13-14.
[79] *Id*.
[80] R. Doc. 11.
[81] R. Doc. 6.
[82] R. Doc. 22.

given the Court's ruling on the Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) and FRCP 12(b)(1).

New Orleans, Louisiana, on this 30th day of June, 2020.

*[signature: Greg Gerard Guidry]*
_____
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**